IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

ROBERT WIEMER                                        PLAINTIFF

v.                                         CAUSE NO. 1:16CV99-LG-RHW

DENISE RUBINO                                        DEFENDANT

**ORDER GRANTING IN PART DR. DENISE RUBINO'S MOTION FOR
ATTORNEYS' FEES AGAINST DR. ROBERT WIEMER**

BEFORE THE COURT is [214] Dr. Denise Rubino's Motion For Attorneys'

Fees Against Dr. Robert Wiemer. Rubino seeks $445,089 in attorneys' fees incurred

in defending herself against Wiemer's claims and prosecuting her counterclaims

against him. Wiemer filed a response in opposition, and Rubino has replied. After

due consideration of the submissions, the Court awards Rubino $274,075.55

in attorneys' fees.

BACKGROUND

Weimer initiated this case as a "Complaint for Permanent Restraining Order

and Other Relief" against Rubino, seeking return of items allegedly taken by Rubino

when their medical practice business relationship disintegrated. Rubino brought

multiple counterclaims. After finding that Wiemer had willfully failed to comply

with his discovery obligations, the Court dismissed Wiemer's claims against Rubino

and ordered default judgment in favor of Rubino on her counterclaims against

Wiemer as a sanction under Federal Rule of Civil Procedure 37(e)(2). The Court

conducted a hearing on damages, at which both parties appeared and testified.

In its [205] Findings of Fact and Conclusions of Law, the Court found many, but not all of Rubino's counterclaims against Wiemer to be well-pled. The Court awarded compensatory damages to the extent Rubino had supported her claims with evidence, plus punitive damages and attorneys' fees and costs. (*See* FF & CL 30-31, ECF No. 205.) Rubino was advised to file this separate motion pursuant to Federal Rule of Civil Procedure 54(d)(2) to obtain an award for attorneys' fees. (*Id.* at 31.)

Rubino sets out the numerous motions she filed and defended against during the three-year lifespan of this case, and notes that "[a] significant portion of the fees incurred in this matter resulted directly from Dr. Wiemer's abuse of the legal system."[1] (Rubino Mot. 5, ECF No. 215.) The Court's intervention was required on multiple occasions because Wiemer did not comply with the Rules of Civil Procedure and the Court's orders. Rubino requests an attorneys' fee award of $445,089 against Wiemer.

Wiemer objects that Rubino did not prevail on all of her counterclaims, and therefore she may not recover fees for time spent on the unsuccessful claims. Wiemer asserts that Rubino's failure to separate out the successful claims makes it impossible for the Court to determine the lodestar, and thereby make an attorneys' fee award.

---

1 Wiemer's abuse of the legal system was discussed at length in the Court's [161] Memorandum Opinion and Order adjudicating three motions to dismiss and a motion for sanctions.

## DISCUSSION

"As always, the Court uses the lodestar method to calculate an award of fees." *Lighthouse Rescue Mission, Inc. v. City of Hattiesburg, Miss.*, No. 2:12-CV-184-KS-MTP, 2014 WL 4402229, at *3 (S.D. Miss. Sept. 5, 2014) (citation omitted). The lodestar is calculated by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly billing rate. *Id.*; *see Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "[T]he lodestar method yields a fee that is presumptively sufficient." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010) (citations omitted).

The Court may then "adjust the lodestar up or down" to account for factors that bear on the propriety of a fee award -- the *Johnson* factors. *Shipes v. Trinity Indus.*, 987 F.2d 311, 320 & n.6 (5th Cir. 1993) (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)). The "most critical" factor is "the degree of success obtained." *Abner v. Kan. City S. Ry. Co.*, 541 F.3d 372, 377 (5th Cir. 2008).

"The party seeking reimbursement of attorneys' fees has the burden of establishing the number of attorney hours expended, and can meet that burden only by presenting evidence that is adequate for the court to determine what hours should be included in the reimbursement." *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995) (cleaned up). The amount sought and the hours expended must be reasonable. *Id.* at 325. "The court should exclude all time that is

excessive, duplicative, or inadequately documented." *Jimenez v. Wood Cty.*, 621 F.3d 372, 379-80 (5th Cir. 2010).

An attorneys' fee award ruling should "explain how each of the *Johnson* factors affects its award" but "need not be meticulously detailed to survive appellate review." *In re High Sulfur Content Gasoline Prod. Liab. Litig.*, 517 F.3d 220, 228 (5th Cir. 2008); *see Blanchard v. Bergeron*, 893 F.2d 87, 89 (5th Cir. 1990) ("[W]e will not require the trial court's findings to be so excruciatingly explicit in this area of minutiae that decisions on fee awards consume more judicial paper than did the cases from which they arose."). As the Supreme Court has explained, "trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011).

## A. The Lodestar

### 1) Hourly Rates

Rubino seeks fees she paid to six attorneys and four paralegals. The attorneys and paralegals are located in Gulfport and Tupelo, Mississippi, New Orleans, Louisiana, and San Diego, California.

Donald Tremblay is a member of the California State Bar and admitted to this Court pro hoc vice. His firm was apparently the first retained to represent Rubino when Wiemer began threatening legal action against her. He has forty years of experience and states that he "was the best positioned attorney to act as her lead trial counsel in this case because Dr. Rubino was here in San Diego as were

many of her supporting documents . . . ." (Tremblay Aff. 3, ECF No. 214-3.) Tremblay's firm counseled Rubino pre-litigation, conducted Wiemer's deposition and defended Rubino's deposition, and otherwise assisted Michael Held of the Phelps Dunbar LLP law firm. Tremblay billed Rubino an hourly rate of $450. The Tremblay firm also billed the work of two other attorneys -- Katherine Tremblay Beck and Peter Q. Schluederberg -- at $300 per hour. Additionally, the firm billed two paralegals at the rate of $150 per hour.

Rubino retained Phelps Dunbar LLP to represent her when this lawsuit was filed. Partner James G. Wyley, III has over thirty years of litigation experience in Mississippi and Louisiana. He billed at the hourly rate of $295. Attorney Michael Held has been licensed to practice law in Mississippi since 2005 and billed Rubino an hourly rate of $210. Andrew Garner with 10 years of experience billed an hourly rate of $260. Another attorney with the firm, Christine Bocek Whitman, billed Rubino an hourly rate of $200. Held states that Phelps Dunbar exercised billing discretion to reduce its attorneys' time entries. (Held Aff. 1, ECF No. 214-1.)

The general rule is that "'reasonable' hourly rates 'are to be calculated according to the prevailing market rates in the relevant community.'" *McClaim v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). Rubino bears the burden of "produc[ing] satisfactory evidence . . . that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* (quoting *Blum*, 465 U.S. at 896 n.11).

Usually, "the 'relevant market for purposes of determining the prevailing rate to be paid in a fee award is the community in which the district court sits'" - here, the Southern Division of the Southern District of Mississippi -- and the reasonable hourly rate for that community "is established through affidavits of other attorneys practicing there." *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002) (quoting *Scham v. Dist. Courts Trying Criminal Cases*, 148 F. 3d 554, 558 (5th Cir. 1998)). Courts also look to other court decisions regarding the prevailing rate. *See, e.g., Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 660 (5th Cir. 1996) (affirming prevailing rate arrived at by district court using "the hourly rate on awards by other judges in the [division,] previous awards in the . . . case, and the published billing rates of outside counsel").

i) Local Counsel

Rubino supports her request with an affidavit from an attorney practicing in this area declaring that the rates charged by Phelps Dunbar attorneys and paralegals are within the prevailing hourly range. (Rubino Mot. Ex. C, ECF No. 214-5.) Wiemer does not object to the Phelps Dunbar rates. The Court finds that rates ranging from $295 per hour for a partner with thirty years experience to $200 per hour for an attorney with seven years experience are reasonable in the Southern District of Mississippi. Additionally, paralegal rates of $110 and $130 per hour are reasonable in this District. *See, e.g., U.S. ex. rel. Rigsby v. State Farm Fire & Cas. Co.*, No. 1:06cv433-HSO-RHW, 2014 WL 691500, at *17 (S.D. Miss. Feb. 21, 2014) (rates of $375 for partner, $262 for junior partner, and $124 for paralegal);

*Trout Point Lodge Ltd. v. Handshoe*, No. 1:12cv90-LG-JMR, 2013 WL 6524650, at

*6 (S.D. Miss. Dec. 11, 2013) (rates of $250 for partner and associate attorneys, and

$125 for paralegal); *Penthouse Owners Ass'n v. Certain Underwriters at Lloyd's*, No.

1:07cv568-HSO-RHW, 2011 WL 6699447, at *12 (S.D. Miss. Dec. 21, 2011) (rates

ranging from $375 for partner to $200 for attorneys, $90 to $75 for paralegals).

ii) Out-of-District Counsel

Rubino's out-of-district attorneys and paralegals practice in San Diego

California. Rubino provides affidavits from attorneys practicing in that forum

setting out reasonable and customary billing rates in San Diego. (Rubino Mot. Ex.

D, ECF No. 214-6; Ex. E, ECF No. 214-7.) She seeks hourly rates of $300 and $450

per hour for the San Diego attorneys and $150 per hour for the paralegals.

However, the Court is generally required to apply the local forum rates. *McClain*,

649 F.3d at 382. The Fifth Circuit created an exception to the local-community rule

for cases "where . . . abundant and uncontradicted evidence prove[s] the necessity of

. . . turning to out-of-district counsel." *Id*. In *McClain*, the court found that the

plaintiffs met that burden because the record was "replete with affidavits from a

variety of expert employment lawyers who swore that no Texas attorneys were

willing and able to assist in such a large case that might drag on for years without

any guarantee of financial remuneration." *Id*. at 383. Rubino has presented no

such evidence of the necessity of turning to out-of-district counsel. Accordingly, the

Court finds no reason to deviate from the general rule that counsel's reasonable

hourly rates are to be calculated according to the prevailing market rates in the relevant community, which is the Southern District of Mississippi. *Id.* at 381.

Accordingly, Donald Tremblay's billing rate will be reduced to $320 per hour, as that is roughly proportionate the rate the Court found is usual and customary for a partner with a few years less experience. Peter Q. Schluederberg's billing rate will be reduced to $295 per hour, as he has equivalent experience to James G. Wyly, III. Katherine Tremblay Beck's billing rate will be reduced to $200, the rate usual and customary for counsel in this area with the same years of experience. The paralegals' rates will be reduced to $120 per hour, which is usual and customary in this area.

   *2. Hours Expended*

Wiemer's only objection to Rubino's attorneys' fee request is that her recovery should be reduced because Rubino was not successful on all of her counterclaims. Wiemer contends that the Court will not be able to calculate the lodestar because Rubino's records are not sufficiently detailed to allow the Court to separate time spent on successful versus unsuccessful counterclaims.

In order to determine whether an attorneys' fee award should be reduced for partial success, the Court must consider whether Rubino failed to prevail on claims that were unrelated to the claims on which she succeeded, and whether Rubino achieved a level of success that makes the hours expended a satisfactory basis for making a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also United States ex rel. Longhi v. Lithium Power Techs.*, 575 F.3d 458, 475-76 (5th Cir. 2009).

When distinctly different claims for relief based upon different facts and legal theories are brought in the same suit against the same defendant, counsel's work on one claim will be unrelated to his work on another claim. *Hensley*, 461 U.S. at 434. Accordingly, work on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved, and no fee may be awarded for services on the unsuccessful claim. *Id*.

Conversely, when a plaintiff's claims for relief involve a common core of facts or are based on related legal theories, much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. *Id*. at 435. The Supreme Court has explained that "[s]uch a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id*. "There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Id*. at 436-37.

The conclusion of this case is unlike the usual lawsuit. Although counsel prepared to litigate the merits of Rubino's counterclaims, from an early stage the case became focused on numerous discovery disputes that stalled progress. Rubino sought relief for Wiemer's failure to provide discovery, and she was successful, obtaining a default judgment concerning her counterclaims. The Court views this as success on the central, dispositive issue presented, regardless of whether each

individual counterclaim ultimately merited an award of damages. Accordingly, the Court makes no attempt to apportion the fee award on the basis of the "success" of individual counterclaims; counsels' time was expended on the litigation as a whole.

However, a reduction of the claimed number of hours is warranted. Seven attorneys charged time to this case. Although it was undoubtedly more convenient for Rubino to have California counsel involved, their presence in this case was not strictly necessary. The Tremblay attorneys included time expended in 2015 -- before this lawsuit was filed -- when Rubino was apparently contemplating filing a lawsuit against Wiemer. The Tremblay firm's early work was not for nothing, but it appears to have been duplicated in 2016, at least in part, when the Phelps Dunbar firm took up Rubino's defense in this case.[2] Tremblay also included time entries in 2016 concerning a potential lawsuit against Wiemer's former attorney, Wayne Woodall. Attorneys in both firms charged time for coordinating their engagement agreement and performing clerical tasks, and Tremblay charged for time seeking admission pro hac vice.[3] All attorneys charged time for conferring with one another

---

2  For example, review of the status and property of the Live Oak and Georgia Peach LLCs took place by the Tremblay firm in 2015 and on multiple occasions by the Phelps Dunbar firm in 2016. There should be no recovery for hours spent in duplicative activity. *Flowers v. Wiley*, 675 F.2d 704, 705 (5th Cir. 1982).
3  *Rigsby*, 2014 WL 691500, at *18 (citing *Davis v. Perry*, No. SA–11–CA–788–OLG–JES–XR, 2014 WL 106990, *24 (W.D.Tex. Jan. 8, 2014) (no recovery for hours spent on pro hac vice admission).

about case status and strategy, and charged their normal hourly rate for travel time.[4]

Because the voluminous time records submitted by Rubino for reimbursement include a significant number of unproductive, excessive, or redundant hours, the Court will exercise its discretion to apply a simple percentage reduction. *See L&A Contracting Co. v. Byrd Bros.*, No. 2:07cv57-DCB-JMR, 2010 WL 1223321, at *3-4 (S.D. Miss. Mar. 24, 2010); *see also Saizan v. Delta Concrete Prod. Co.,* 448 F.3d 795, 799 (5th Cir. 2006) ("The proper remedy for omitting evidence of billing judgment . . . [is] a reduction of the award by a percentage intended to substitute for the exercise of billing judgment.") The reduction percentage applied by courts has ranged from ten percent to fifty percent. *Walker*, 99 F.3d at 770 (reducing fee award by 15% for lack of billing judgment); *see also Saizan*, 448 F.3d at 800 (10% reduction for vagueness, duplicative work and lack of billing judgment); *Hopwood v. State of Texas*, 236 F.3d 256, 279 (5th Cir. 2000) (25% reduction based on inadequate time entries, duplicative work product and lack of billing judgment); *Carroll v. Sanderson Farms, Inc.*, No. H-10-3108, 2014 WL 549380, at *23 (S.D. Tex. Feb. 11, 2014) (50% reduction when counsel failed to demonstrate billing judgment, majority of entries were vague and it was unclear whether fees were for clerical or legal work); *Cole v. Orleans Par. Sheriff's Office*, No. 11-2211, 2013 WL 5557416, at *4 (E.D. La. Oct. 8, 2013) (50% reduction for

---

[4] *Alexander v. City of Jackson*, No. 3:04CV614 HTW-LRA, 2011 WL 1059293, at *12 (S.D. Miss. Mar. 21, 2011) (reducing hours spent conferring with other attorneys); *Shipes*, 987 F.2d at 320 (hourly fee reduced for travel time).

failure to exercise billing judgment); *Preston Expl. Co. v. GSP, LLC*, No. H-08-3341, 2013 WL 3229678, at *9 (S.D. Tex. June 25, 2013) (noting that courts have reduced fees up to 50% for billing judgment and reducing hours by 20% because (a) partners performed tasks more suited to associates or paralegals; (b) attorneys and paralegals billed for clerical tasks; (c) attorneys billed regular rates for unproductive travel time; (d) many billing entries were vague; and (e) case was overstaffed with partners who often duplicated each other's efforts). The Court finds a thirty percent reduction to be appropriate in this case.

### 3. *The Lodestar Calculation*

Having carefully reviewed the invoices provided by counsel, the Court makes the following lodestar calculation.

| | Hourly Rate | Hours from billing records | Hours after 30% reduction | Total |
|---|---|---|---|---|
| Donald Tremblay | $320 | 584.75 | 409.33 | $130,984.00 |
| James G. Wyly, III | $295 | 29.4 | 20.58 | $6071.10 |
| Peter Q. Schluederberg | $295 | 0.5 | .35 | $103.25 |
| Andrew Garner | $260 | 9.7 | 6.79 | $1765.40 |
| Michael Held | $210 | 613.5 | 429.45 | $90,184.50 |
| Katherine Tremblay Beck | $200 | 90.6 | 63.42 | $12,684.00 |
| Christine Bocek Whitman | $200 | 193.3 | 135.31 | $27,062.00 |
| Chiniki Safaya | $130 | 47.9 | 33.53 | $4358.90 |
| Dena Myers | $110 | 11.2 | 7.84 | $862.40 |

| LODESTAR | | | | $274,075.55 |
|---|---|---|---|---|

Time expended by Tremblay firm paralegals Nancy Paine and Eric Beck is not included in the lodestar calculation. Only Eric Beck's entries were identified by initials in the Tremblay firm's invoices, and his entries were for mailing subpoenas and collecting documents to transmit to Mississippi counsel. "Paralegal work can only be recovered as attorney's fees if the work is legal rather than clerical." *Vela v. City of Hous.*, 276 F.3d 659, 681 (5th Cir. 2001). The Tremblay firm has not shown that either of its paralegals' work was legal in nature, so the Court cannot include the requested paralegal time as part of its award.

### B. The *Johnson* Factors

After the lodestar is determined, the Court may adjust the fee award upward or downward applying the twelve factors articulated in *Johnson v. Georgia Highway Express, Inc.*[5] But "the lodestar method yields a fee that is presumptively sufficient." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010). And "many of the Johnson 'factors usually are subsumed within the initial calculation of hours

---

5 The twelve *Johnson* factors are: (1) the time and labor required for the litigation; (2) the novelty and complication of the issues; (3) the skill required to properly litigate the issues; (4) whether the attorney had to refuse other work to litigate the case; (5) the attorney's customary fee; (6) whether the fee is fixed or contingent; (7) whether the client or case circumstances imposed any time constraints; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) whether the case was "undesirable;" (11) the type of attorney-client relationship and whether that relationship was long-standing; and (12) awards made in similar cases. *Johnson*, 488 F.2d at 717-18.

reasonably expended at a reasonable hourly rate.'" *Penthouse Owners Ass'n, Inc. v. Certain Underwriters at Lloyd's, London*, No. 1:07-CV-568-HSO-RHW, 2011 WL 6699447, at *4 (S.D. Miss. Dec. 21, 2011) (quoting *Hensley*, 461 U.S. at 434 n.9).  In this case, Rubino argues only that the *Johnson* factors are either accounted for in the lodestar calculation or support her request in full.  Wiemer does not seek a *Johnson* reduction.  The Court concludes that its calculated lodestar adequately accounts for the concerns raised by the *Johnson* factors and results in an appropriate fee.

**IT IS THEREFORE ORDERED AND ADJUDGED** that [214] Dr. Denise Rubino's Motion For Attorneys' Fees Against Dr. Robert Wiemer is **GRANTED** to the extent that Rubino is awarded $274,075.55 in attorneys' fees against Wiemer.  Any other request for relief is denied.

**SO ORDERED AND ADJUDGED** this the 12th day of June, 2019.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE